William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Avenue, 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax)(646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NADINE GENNINGS,                                  :        ECF
Individually and on Behalf of All Other           :        17 Civ. _____
Persons Similarly Situated,                       :
                                                  :
                             Plaintiffs,          :
                                                  :        **COMPLAINT AND**
          -against-                               :        **JURY DEMAND**
                                                  :
AQUINAS LLC. d/b/a                                :
"Senior Helpers", GLEN GALKA and                  :
JOHN DOES #1-10,                                  :
                                                  :
                             Defendants.          :
-------------------------------------------------------------------X

          Plaintiff NADINE GENNINGS ("Plaintiff"), on behalf of herself individually and as

class representative of other employees similarly situated, by and through her attorney,

complains and alleges for her complaint against, AQUINAS LLC. d/b/a "Senior Helpers", Glen

Galka and JOHN DOES #1-10 (together "Defendant" or "Defendants") as follows:

                              **NATURE OF THE ACTION**

          1.       Plaintiff NADINE GENNINGS was a home health aide who worked numerous 24

hour shifts for which she was illegally paid for only 13 of the 24 hours worked, as she did not get

meal breaks and did not get 5 hours of uninterrupted sleep.

          2.       Plaintiff worked for Defendants for more than 40 hours per week ("overtime

hours") and, along with numerous other similar home health aides, was not paid time and one

half for her overtime hours.

3.      Plaintiff alleges on behalf of herself and other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

4.      Plaintiff further complains on behalf of herself, and a class of other similarly situated current and former employees of the Defendant, pursuant to Fed. R. Civ. P. 23, that they are entitled to back wages from Defendant for (a) hours worked for which they did not receive wages including wages as required under the Wage Parity Act, (b) overtime hours worked for which they did not receive time and one half the minimum wage or time and one half their actual wages, and (c) spread of hours work performed for which they did not receive an extra hour of pay, as required by the New York Labor Law §§ 650 *et seq.* and the supporting New York State Department of Labor regulations and are also entitled to damages under the New York Wage Theft Prevention Act because Defendants did not provide proper notices to Plaintiff.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.      Venue is proper in this district pursuant to 28 U.S.C. §1391.

7.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**THE PARTIES**

8.      Plaintiff NADINE GENNINGS was, at all relevant times, an adult individual, residing in Kings County in New York State.

9.      Upon information and belief, Defendant Aquinas LLC ("Corporate Defendant") had an office at 30 Broad Street, New York, N.Y. 10004, and upon information and belief Defendant's principal place of business is at 353 West 48th Street, 4th Floor, New York, N.Y. 10036.

10.     Upon information and belief, Defendant GLEN GALKA is the President and owner of Aquinas LLC, whose address is unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and is jointly and severally liable with the Corporate Defendant.

11.     Upon information and belief, GLEN GALKA is the President of AQUINAS LLC., and has held these positions during the last 6 years ("Galka time period").

12.     Upon information and belief, during the Galka time period, GLEN GALKA had authority over the Corporate Defendant's management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendants' home health aide employees and other employees and his decisions directly affected the nature and condition of the home health care employees' employment.

13.     Upon information and belief, during the Galka time period, GLEN GALKA (1) had the power to hire and fire the home health aide employees of the Corporate Defendant, (2) supervised and controlled the home health aide employees' schedules and conditions of

employment, (3) determined the rate and method of payment of the home health aide employees, and (4) maintained employment records related to the home health aide employees.

14.     Upon information and belief, John Does #1-10 represent the officers, directors and/or managing agents of the Corporate Defendant, whose identities are unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

## COLLECTIVE ACTION ALLEGATIONS

15.     Pursuant to 29 U.S.C. §207, Plaintiff seeks to prosecute her FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendant at any time since August 9, 2011 (time tolled by failure to post notice) to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wages and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

16.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are at least 40 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

4

17.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

18.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

19.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are

       a.    whether the Defendant employed the Collective Action members within the meaning of the FLSA;

       b.    whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

       c.    what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

       d.    whether Defendant failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of C.F.R. § 516.4;

e.   whether Defendant failed to pay the Collective Action Members minimum
wages and overtime compensation for hours worked in excess of forty hours
per workweek, in violation of the FLSA and the regulations promulgated
thereunder;

f.   whether Defendant's violations of the FLSA are willful as that term is used
within the context of the FLSA;

g.   whether Defendant is liable for all damages claimed hereunder, including but
not limited to compensatory, punitive and statutory damages, interest, costs
and disbursements and attorneys' fees; and

h.   whether Defendant should be enjoined from such violations of the FLSA in
the future.

20.     Plaintiff knows of no difficulty that will be encountered in the management of this
litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

21.     Plaintiff sues on her own behalf and on behalf of a class of persons under Rules
23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

22.     Plaintiff brings her New York Labor Law claim on behalf of all persons who were
employed by Defendant at any time since August 9, 2011, to the entry of judgment in this case
(the "Class Period"), who were not paid all their straight time wages, minimum wages
(including those required by the NY Health Care Worker Wage Parity Act), spread of hour
wages, and/or overtime wages and/or were not provided the notices required by the Wage
Theft Prevention Act (the "Class").  See Andryeyeva v. New York Health Care, Inc., 45 Misc.

3d 820, 994 N.Y.s.2d 278 (N.Y. Sup. Kings Co. 2014) (certifying class of home health aides who were not paid for all of their 24 hour shifts).

23.      The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there at least 40 members of Class during the Class Period.

24.      The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy— particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

25.      The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

26.      Plaintiff is committed to pursuing her action and has retained competent counsel experienced in employment law and class action litigation.

27.      Plaintiff has the same interests in this matter as all other members of the class and Plaintiff's claims are typical of the Class.

28.      There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

    a.   whether the Defendant employed the members of the Class within the meaning of the New York Labor Law;

b.  whether the Defendant failed to keep true and accurate time records for all hours

worked by Plaintiff and members of the Class;

c.  what proof of hours worked is sufficient where employers fail in their duty to

maintain time records;

d.  whether Defendant failed and/or refused to pay the members of the Class for all hours

worked by them as well as premium pay for hours worked in excess of forty hours per

workweek as well as spread of hours pay for hours worked a spread of more than ten

hours, within the meaning of the New York Labor Law;

e.  whether the Defendant is liable for all damages claimed hereunder, including but not

limited to compensatory, interest, costs and disbursements and attorneys' fees;

f.  whether the Defendant should be enjoined from such violations of the New York

Labor Law in the future; and

## STATEMENT OF FACTS

29.     NADINE GENNINGS ("GENNINGS") was a home health aide/maid employed

by Aquinas LLC d/b/a "Senior Helpers" and Glen Galka (collectively "Defendants"), from about

September 15, 2013 until about April 15, 2015 (the "time period") working in Queens County,

New York.

30.     Upon information and belief, Glen Galka is the President and owner of Aquinas

LLC.  Defendants are an employment agency that employs home health aides in New York City.

31.     During the time period, Defendants had an office at 30 Broad Street, New York,

N.Y. 10004, and upon information and belief Defendant's principal place of business is at 353

West 48th Street, 4th Floor, New York, N.Y. 10036.

32.     During the time period, GENNINGS never worked for Defendants outside of

New York City.

33.      During the time period, GENNINGS was not paid full regular wages for all her hours worked and was not paid overtime wages for all of her hours worked over forty in a workweek ("overtime"), and was not paid an extra hour of pay for her hours worked over a spread of 10 hours per day.

34.      During the time period, GENNINGS often worked for 24 hours staying overnight at the client's house, and on these days was only paid for 13 hours, despite the fact that her sleep was regularly interrupted generally at least 3-4 times by the client throughout the night which prevented GENNINGS from getting 5 hours of uninterrupted sleep and/or 8 hours of sleep and despite the fact that GENNINGS was not given any time off for meal breaks.

35.      During the time period, during a work week, GENNINGS often worked 3 to 5 twenty-four hour live in shifts and was paid only about $125 per each 24 hour shift which was below minimum wage, and also was not paid any overtime premium pay.  GENNINGS was always paid less than $130 per 24 hour live in shift.

36.      During 2014 and 2015, GENNINGS worked four or more 24 hour live in shifts in a week during numerous weeks.

37.      During the time period, GENNINGS' residence was not the residence of any client but was at all times 1388 East 98th Street, Canarsie, Brooklyn 11233.

38.      During the time period, GENNINGS signed in and out using timesheets.

39.      During the time period, GENNINGS did not receive a meal break and generally ate while working.

40.      During the time period, GENNINGS was not paid for all her hours worked and was not paid for her hours worked over 40 hours a week ("overtime hours") at time and one half

her regular wage rate or time and one half the minimum wage rate.

41.     During the time period, GENNINGS' job responsibilities as a home health aide/maid included, among others, cleaning the entire house, cooking and doing the laundry.

42.     GENNINGS was required to prepare three meals a day, breakfast, lunch and dinner.

43.     Breakfast usually consisted of eggs, oatmeal, and milk.

44.     Lunch usually consisted of a cooked meal with rice soup or pasta, a meat (usually chicken or fish) and also soup and dessert.  Sometimes alternatively GENNINGS made a sandwich or mixed vegetables for lunch.

45.     Dinner usually consisted of the similar items as lunch.

46.     GENNINGS was required to prepare whatever foods the customer requested.

47.     GENNINGS generally was required to make the beds every morning.

48.     Defendants required GENNINGS to do a number of tasks on a daily basis, including but not limited to: dusting, vacuuming, cleaning the bathroom (including the toilet, tub and shower), mopping the kitchen floors, scrubbing the kitchen counters, cleaning the pots and pans, loading/unloading the dishwasher, and taking out the garbage.

49.     GENNINGS generally was required to do the laundry every day.

50.     GENNINGS was also required to clean out the refrigerator and put away the new groceries at least once every week.

51.     GENNINGS also was required to remind the customers to take their medications but was not permitted to touch the medications.

52.     GENNINGS spent at least 30% of her time directly performing household work, including sweeping and mopping.

53.     During the time period, Defendants hired at least 40 other similar home health aides/maids, who also were not paid their overtime at the full time and one half rate or at the time and one half the minimum wage rate and also worked for clients whose invoices were directly or indirectly paid for by New York Medicaid and also did not receive the minimum wage rate required by the NY Health Care Worker Wage Parity Act.

54.     During the time period, GENNINGS complained to her coordinator that she was not getting meal breaks and was not getting 5 hours of uninterrupted sleep and 8 hours of total sleep during her 24 hour live in shifts, and she said that Defendants' policy was to pay only 13 hours for 24 hour shifts.

55.     Throughout the time period, Defendant has likewise employed at least 40 other individuals, like her, in positions as home health aides/maids.

56.     Throughout the time period, such individuals have only been paid for 13 hours of work when they work a 24 hour overnight shift and were not paid for all at their hours worked during 24 hour assignments during which they were not able to get uninterrupted sleep, and have not been paid minimum wages for all hours worked and have not been paid overtime premium wages of one and one half times the minimum wage rate or one and one half times their regular hourly rate for their overtime hours worked.

57.     During the time period, GENNINGS and similar home health aide/maid employees of Defendant were not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principle place of business and telephone number and her specific rate of pay as required by the New York Wage Theft Prevention Act.

58.     GENNINGS have not been given any specific notice of this information to sign

11

and have not signed any such notice.  Upon information and belief the other home health aide employees also were not given such notice.

## CLAIM I
## FAIR LABOR STANDARDS ACT

59.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

60.    At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

61.    At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action Members within the meaning of the FLSA.

62.    Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

63.    Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).  The named Plaintiff's written consent is attached hereto and incorporated by reference.

64.    At all relevant times, the Defendants had a policy and practice of refusing to pay its employees minimum wages and/or overtime wages equal to time and one half their employees' regular wages for hours worked over forty in a work week.

65.    As a result of the Defendants' willful failure to compensate its employees, including Plaintiff and the Collective Action members overtime wages and/or minimum wages for all of their hours worked the Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

66.    As a result of the Defendants' failure to record, report, credit and/or compensate

its employees, including Plaintiff and the Collective Action members, the Defendants have failed

to make, keep and preserve records with respect to each of its employees sufficient to determine

the wages, hours and other conditions and practices of employment in violation of the FLSA, 29

U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

67.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA

within the meaning of 29 U.S.C. § 255(a).

68.     Due to the Defendants' FLSA violations, Plaintiff and the Collective Action Class

are entitled to recover from the Defendants, their unpaid minimum and overtime wages, and an

equal additional amount as liquidated damages, additional liquidated damages for unreasonably

delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of

this action, pursuant to 29 U.S.C. § 216(b).

## CLAIM II
## NEW YORK LABOR LAW

69.     Plaintiff repeats and realleges each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

70.     At all relevant times, Plaintiff and the members of the Class were employed by

the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

71.     Defendants willfully violated Plaintiff's rights, and the rights of the members of

the Class, by failing to pay them wages in violation of the New York Labor Law and its

regulations.

72.     The Defendants' New York Labor Law violations have caused Plaintiff and the

members of the Class, irreparable harm for which there is no adequate remedy at law.

73.     Due to the Defendants' New York Labor Law violations, Plaintiff and the

members of the Class are entitled to recover from Defendants their unpaid wages, unpaid

minimum wages, unpaid overtime wages, unpaid spread of hours wages, reasonable attorneys'

fees, and/or costs and disbursements of the action, pursuant to New York Labor Law §663(1) et

seq.

74.     Defendants willfully violated Plaintiff's rights by failing to provide his proper

notices and wage statements in violation of the New York Wage Theft Prevention Act, N.Y. Lab.

Law § 198(1-a) (enacted on April 9, 2011).

75.     As a result of Defendants' violation of the New York Wage Theft Prevention Act,

Plaintiff is entitled to damages of at least $150 per week during which the violations occurred.

## CLAIM III
(Breach of Contract –Third Party Beneficiaries of Wage Parity Act Contract
With New York State)

76.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this

Complaint.

77.     Upon information and belief, at all times relevant to this complaint, Defendant

were required to certify and did certify that they paid Plaintiff and members of the Class wages

as required by NY Health Care Worker Wage Parity Act.

78.     The agreement to pay Plaintiff and the Class wages as required by the NY

Health Care Worker Wage Parity Act was made for the benefit of the Plaintiff and the Class.

79.     Defendant breached their obligation to pay Plaintiff and the Class all wages they

were due as required by the NY Health Care Worker Wage Parity Act and as result Plaintiffs

and members of the Class were injured.

80.     Plaintiff and the Class, as third party beneficiaries of Defendants' contract with

government agencies to pay wages as required by the NY Health Care Worker Wage Parity

Act, and as persons protected by the NY Health Care Worker Wage Parity Act are entitled to relief for the breach of this contractual obligation and the violation of this Act, plus interest.

### CLAIM IV
(Unjust Enrichment, Defendants' Failure to Pay All Wages Due Including Wages for Minimum Wages under the NY Health Care Worker Wage Parity Act, and Spread of Hours)

81.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

82.     Under the common law doctrine of "unjust enrichment" insofar as Defendants, by their policies and actions, benefited from, and increased their profits and personal compensation by failing to pay Plaintiff and the Class: (1) all wages due for work performed; (2) an extra hour at the minimum wage for working a "spread of hours" in excess of 10 hours or a shift longer than 10 hours; and (3) all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act.

83.     Defendant accepted and received the benefits of the work performed by Plaintiff and the Class at the expense of Plaintiff and the Class.  It is inequitable and unjust for Defendants to reap the benefits of Plaintiff's and the Class's labor, without paying all wages due, which includes but is not limited to all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act, regular hours caring for the clients of Defendants, and failing to pay for required trainings, uniform expenses, and the pay due for spread of hours.

84.     Plaintiff and the Class are entitled to relief for this unjust enrichment in an amount equal to the benefits unjustly retained by Defendant, plus interest on these amounts.

### CLAIM V
(Violation of Wage Parity Act Minimum Wage Requirement)

85.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

86.     Upon information and belief, at all times relevant to this complaint, Defendants were required to certify and did certify that they paid Plaintiff and members of the Class wages as required by NY Health Care Worker Wage Parity Act.

87.     Under the NY Health Care Worker Wage Parity Act Defendants were required to pay Plaintiff and the members of the Class minimum wages under the NY Health Care Worker Wage Parity Act.

88.     Defendants breached their obligations to pay minimum wages as required by the NY Health Care Worker Wage Parity Act, and as result Plaintiff and members of the Class were injured.

89.     Plaintiff and the Class are entitled to recover their unpaid minimum wages, plus interest, as relief for the violation of the NY Health Care Worker Wage Parity Act.

## CLAIM VI
(Breach of Contract-Wages)

90.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

91.     Plaintiff and the members of the class entered into contracts with the Defendant under which Plaintiff and the members of the Class were to provide home health aide and maid services and Defendants were required to pay wages as required by law.

92.     Plaintiff and the members of the Class fulfilled their obligations under the contracts but Defendant failed to pay wages as required by law.

93.     As a result of Defendants' breach, Plaintiff and the members of the Class are entitled to recover damages, plus interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and all other similarly situated Collective Action Members and members of the Class, respectfully requests that this Court grant the following relief:

a.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and her counsel to represent the Class;

b.  Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and her counsel to represent the Collective Action members;

c.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

d.  An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.  An order tolling the statute of limitations;

f.  An award of unpaid wages, spread of hours wages, overtime wages and minimum

wages due under the FLSA, the New York Labor Law, the New York common

law, and/or the NY Health Care Worker Wage Parity Act;

g.   An award of liquidated and/or punitive damages, as a result of the Defendants'

willful failure to pay wages, minimum wages, and/or overtime wages pursuant to

29 U.S.C. § 216 and the New York Labor Law and the New York common law

and the NY Health Care Worker Wage Parity Act;

h.   An award of prejudgment and postjudgment interest;

i.   An award of costs and expenses of this action together with reasonable attorney's

and expert fees;

j.   Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
        August 9, 2017

                                    LAW OFFICE OF WILLIAM COUDERT RAND


                                    _____
                                    William Coudert Rand, Esq.
                                    *Attorney for Plaintiff*, Individually and on
                                    Behalf of All Persons Similarly Situated
                                    501 Fifth Ave. 15th Floor
                                    New York, New York 10017
                                    Tel: (212) 286-1425
                                    Fax: (646) 688-3078
                                    Email: wcrand@wcrand.com

18

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Senior Helpers Franchising LLC Aquinas LLC, Senior Helpers, Glen Golka _____ to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_N Genning_____  6-27-17   _Nadine Genning_____
Signature            Date   Print Name

8